15 F.3d 1500
 29 U.S.P.Q.2d 1610
 IOLAB CORPORATION, Plaintiff-Appellant,
v.
SEABOARD SURETY COMPANY; Employers Reinsurance Corporation;
Republic Insurance; Lexington Insurance Company;
Employers Insurance of Wausau; Allstate Insurance Company;
Granite State Insurance Company; National Union Fire
Insurance Company of Pittsburgh, Pa.; North River Insurance
Company et al.; American Motorists Insurance Company and
Lumbermens Mutual Casualty Company; Stonewall Insurance
Company; Insurance Company of North America; Hartford
Casualty Insurance Company and Twin City Fire Insurance
Company, Defendants-Appellees.
 No. 92-55642.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted October 4, 1993.
Decided Jan. 28, 1994.
 
 Robert P. Lobue, Patterson, Belknap, Webb & Tyler, New York, New York and Michael J. O'Connor, Christensen, White, Miller, Fink & Jacobs, Los Angeles, California, for the plaintiff-appellant.
 Robert A. Zeavin, Shane & Paolillo, Los Angeles, California, for defendant-appellee Seaboard Surety.
 Scott T. Pratt, Keesal, Young & Logan, Long Beach, California, for defendant-appellee Employers Reinsurance.
 Linda S. Dakin, Chadbourne & Parke, Los Angeles, California, for defendant-appellee Republic Insurance.
 Brian F. Zimmerman, Zimmerman & Kahanowitch, Encino, California, for defendant-appellee Lexington Insurance.
 Patricia Saint Peter, Zelle & Larson, Minneapolis, Minnesota, for defendant-appellee Employers Insurance of Wausau.
 Susan J. Field, Musick, Peeler & Garrett, Los Angeles, California, for defendant-appellee Allstate Insurance.
 Richard B. Wolf, Lauren John Udden and Cathey Stricker of Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, California, for defendants-appellees National Union Fire Insurance, Granite State Insurance.
 Donald K. Fitzpatrick, Esq. and Estie R. Stoll, Esq., Mendes & Mount, Los Angeles, California, for defendant-appellee North River Insurance Co.
 Lane J. Ashley, Sedgwick, Detert, Moran & Arnold, Los Angeles, California, for defendants-appellees American Motorists, Lumbermens Mutual Casualty.
 Lauren John Udden & Cathey Stricker, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, California, for defendant-appellee Stonewall Insurance.
 Craig D. Aronson and Rita H. Issagholian, Hagenbaugh & Murphy, Glendale, California, for defendant-appellee Insurance Co. of North America.
 Kelley K. Beck, Hawkins, Schnabel & Lindahl, Los Angeles, California, for defendants-appellees Hartford Casualty, Twin City Fire Insurance.
 Appeal from the United States District Court for the Central District of California.
 Before: FLETCHER and D. W. NELSON, Circuit Judges and WILL*, Senior District Judge.
 OPINION
 D.W. NELSON, Circuit Judge:
 
 OVERVIEW
 
 1
 In this diversity action, plaintiff-appellant Iolab Corporation ("Iolab") seeks indemnification from its primary and excess insurers to satisfy a settlement entered into in a prior patent infringement action (the "Jensen loss"). Iolab appeals the district court's decision to dismiss the claims against, or grant summary judgment in favor of, the insurers. Iolab claims that the Jensen loss is covered by a provision in the insurance policies protecting Iolab against liability for acts of piracy arising out of or committed in advertising. Iolab also contends that it was not required to exhaust its primary coverage nor to establish that excess coverage was triggered by the Jensen loss before bringing suit against its excess insurers. Although the district court did not state the reasons for its conclusions, we affirm. We hold that the district court properly dismissed the claims against or granted summary judgment in favor of the primary insurers because the Jensen loss was not covered under the policies. In addition, we affirm the district court's decision with respect to the excess insurers on the separate and independent ground that under California law, Iolab was required to exhaust its primary coverage and to establish that the Jensen loss exceeded that coverage prior to bringing suit against the excess insurers.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Iolab is a wholly owned subsidiary of Johnson & Johnson. From 1980 to 1990, Iolab manufactured and sold an intraocular lens designed to replace the natural lens. In 1986 Dr. Ronald P. Jensen, who owned the patent for the optical device, brought suit against Iolab alleging that Iolab was infringing his patent. The trial was bifurcated between liability and damages. In August of 1990, the district court for the Central District of California found Iolab liable for patent infringement. See Jensen v. Iolab Corp., CV-86-4384 (C.D.Cal.1990). Although at that time the Jensen court did not determine the amount of the damages, it held that the measure of damages should be a reasonable royalty, estimated at 3.5%, of Iolab's net sales for the period from 1980 to the date of the judgment in 1990, and that, with the addition of a penalty, Iolab should pay a total of one and one-half times the sum of the royalties. According to Iolab, based on the district court's measure of damages, Iolab would have had to pay in excess of $33 million to Jensen.
 
 
 3
 Before reaching the damages portion of the trial, however, Iolab raised the defense that, under 35 U.S.C. Sec. 271(e)(1), Iolab was authorized to sell the patented product because its sales were "solely for uses reasonably related to the development and submission of information." 35 U.S.C. Sec. 271(e)(1) (1988). In response to Iolab's section 271(e)(1) defense, Jensen argued that Iolab was not entitled to a section 271(e)(1) exemption because Iolab sold the intraocular lens for economic gain rather than for research and to obtain FDA approval. Jensen pointed to the extensive marketing techniques, including advertising, employed by Iolab to maximize sales as evidence that Iolab's motive for selling the patented product was financial, and contended that the sales thus did not fall within the section 271(e)(1) exemption. Subsequently, the parties settled and Iolab agreed to pay $13.5 million to Dr. Jensen. In the present action, Iolab seeks indemnification from its insurers for $13.5 million together with costs estimated at $1 million, a total of $14.5 million. Iolab contends that the Jensen loss is covered by clauses in the insurance policies (the "policies") providing coverage for piracy arising out of or committed in advertising.[1]
 
 
 4
 Iolab brought suit against fifteen insurance companies (collectively the "insurers"), four of which are primary insurers and eleven of which are excess insurers. Specifically, the primary insurers are Seaboard Surety Company, American Motorists Insurance Company, Lumbermens Mutual Casualty Company, and Employers Reinsurance Corporation; the excess insurers are National Union Fire Insurance Company, Granite State Insurance Company, Stonewall Insurance Company, North River Insurance Company, Insurance Company of North America, Republic Insurance Company, Allstate Insurance Company, Hartford Casualty Insurance Company, Twin City Fire Insurance Company, Lexington Insurance Company, and Employers Insurance of Wausau. Iolab's aggregate primary coverage between 1980 and 1990 amounted to $36 million; Seaboard provided eight years of coverage at $1 million per year, Employers Reinsurance provided three years of coverage at $1 million per year, American provided four years of coverage at $5 million per year, and Lumbermens provided one year of coverage at $5 million per year. The excess policies specifically provide that their liability does not attach until the underlying insurers have paid or have been held liable to pay.
 
 
 5
 The district court dismissed on the pleadings the actions against four insurers, dismissed a fifth based on the complaint alone, and granted summary judgment dismissing the remaining ten. Iolab appealed.
 
 STATEMENT OF JURISDICTION
 
 6
 The district court had jurisdiction in this case based on 28 U.S.C. Sec. 1391(a)(2) and (a)(3). The amount in controversy exceeded $50,000 with respect to each defendant and the complete diversity requirement was satisfied. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and Fed.R.App.P. 4(a).
 
 STANDARD OF REVIEW
 
 7
 A district court's grant of summary judgment is reviewed de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). Pursuant to Federal Rule of Civil Procedure 56(c), the appellate court should affirm the district court's grant of summary judgment if, viewing the facts in the light most favorable to the nonmoving party, there are no issues of material fact and summary judgment is appropriate as a matter of law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). The court of appeals may affirm on any ground supported by the record. United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993).
 
 
 8
 A dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted is also reviewed de novo. Oscar v. University Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992). All factual allegations made by the nonmoving party are taken as true and construed in the light most favorable to that party. Id. at 785. A motion to dismiss should be granted and upheld on appeal only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. Id. at 789.
 
 DISCUSSION
 
 9
 The insurers raise several defenses in response to Iolab's claim against them. We limit our discussion to the two grounds on which we affirm. This is not to suggest, however, that other defenses raised by defendants-appellees may also have merit.
 
 A. THE EXCESS INSURERS
 
 10
 The excess insurers argue that the district court properly dismissed them from the case or granted summary judgment in their favor on the claims Iolab raised against them because, even assuming that the excess policies would be triggered by the Jensen loss, Iolab was required to exhaust primary coverage before requesting payment from the excess insurers. The excess insurers also argue that because the total amount of the Jensen loss was below the aggregate primary coverage, the excess policies would never be triggered, providing a second basis for dismissal. Iolab argues that it should be allowed to sue all insurers in order to make a comprehensive determination of coverage since a contrary result, requiring it to litigate one layer of insurance at a time, would be wasteful. Iolab further argues that even assuming that the excess insurers' liability, if any, would only attach after primary coverage was exhausted, the district court could have treated its claim against the excess insurers as a request for declaratory judgment. Iolab concedes that it did not request that the district court relabel Iolab's action as an action for declaratory judgment but contends that the district court should have done so. Iolab's argument, however, is without merit.
 
 
 11
 First, under California law, it is clear that "[a]ll primary insurance must be exhausted before liability attaches under a secondary policy." Olympic Ins. Co. v. Employers Surplus Lines Ins. Co., 126 Cal.App.3d 593, 599, 178 Cal.Rptr. 908 (1981). Further, "liability under [an excess] policy will not attach until all primary insurance is exhausted, even if the total amount of primary insurance exceeds the amount contemplated in the secondary policy." North River Ins. Co. v. American Home Assurance Co., 210 Cal.App.3d 108, 115, 257 Cal.Rptr. 129 (1989); see also Signal Co. v. Harbor Ins. Co., 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889 (1980); Denny's Inc. v. Chicago Ins. Co., 234 Cal.App.3d 1786, 286 Cal.Rptr. 507 (1991) (affirming the trial court's summary judgment in favor of the excess insurers on the ground that primary coverage had not been determined); Hellman v. Great Amer. Ins. Co., 66 Cal.App.3d 298, 305, 136 Cal.Rptr. 24 (1977); Hartford Acc. & Indemn. v. Continental Nat. Am. Ins., 861 F.2d 1184 (9th Cir.1988); Continental Cas. Co. v. U.S.F. & G., 516 F.Supp. 384 (N.D.Cal.1981). Thus, Iolab could not have sued the excess insurers for breach of contract until the legal obligations of the primary insurers had been determined and the excess policies had been triggered.
 
 
 12
 Second, the district court did not abuse its discretion in refusing to treat Iolab's action as a request for declaratory relief. The court in Hartford, applying California law, "rejected the proposition that 'once the excess insurer has been given notice that the ... claim against its insured might invade the excess coverage, and the amount of potential exposure is reasonably ascertainable, the excess insurer should be obligated to participate immediately in the defense.' " Hartford, 861 F.2d at 1186 (citing Signal, 27 Cal.3d at 366, 165 Cal.Rptr. 799, 612 P.2d 889). The Hartford court explained that "requiring the excess insurer to join the defense 'would require the [excess insurer] to contribute to the defense costs incurred by the primary carrier even though excess liability might never attach and despite explicit provisions of [the excess insurer's] policy.' " Id. (citing Signal, 27 Cal.3d at 367-68, 165 Cal.Rptr. 799, 612 P.2d 889). The policy behind the Hartford holding, to avoid the imposition of unnecessary litigation costs on excess insurers, applies to a breach of contract claim and to an action for declaratory relief alike. That policy applies here. Iolab has not established that the Jensen loss will ever trigger excess coverage. Regardless of how Iolab's claim against the excess insurers is labeled, requiring the excess insurers to defend against Iolab's claim would impose on the excess insurers the unnecessary cost of litigating a claim that may never trigger excess coverage and thereby would frustrate the policy adopted by California courts. Consequently, the district court did not abuse its discretion in failing to relabel Iolab's complaint as a request for declaratory relief and properly dismissed the claims against the excess insurers.
 
 B. THE PRIMARY INSURERS
 
 13
 The district court dismissed or granted summary judgment in favor of the primary insurers. We affirm the district court on the ground that the Jensen loss was not covered under the policies.[2]
 
 
 14
 The provisions of the policies at issue provide coverage for piracy arising out of or committed in advertising.[3] Under California law, we must decide whether Iolab had a reasonable expectation that the policies, which promised indemnification for advertising injuries, provided coverage for the liability resulting from Iolab's infringement of Dr. Jensen's patent. See, e.g., AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990). We conclude that Iolab's infringement of Dr. Jensen's patent was not an act of piracy arising out of or committed in advertising and thus was not covered by the policies.
 
 
 15
 In Bank of the West v. Superior Court, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992), the California Supreme Court considered the scope of coverage afforded by insurance covering for liability arising out of advertising. In its decision, the court held that " 'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage," Id. at 1277, 10 Cal.Rptr.2d 538, 833 P.2d 545. The Bank of The West court explained that "a claim of patent infringement does not 'occur in the course ... of advertising activities' within the meaning of the policy even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than its advertisement." Id. at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545 (citing National Union Fire Ins. Co. v. Siliconix Inc., 729 F.Supp. 77, 80 (N.D.Cal.1989)). Thus, under Bank of the West, unless Dr. Jensen's claim was that Iolab infringed his patent in its advertising, in a manner independent of its sale of the intraocular lens, the Jensen loss is not a form of piracy arising out of or committed in advertising and is not covered under the policies.
 
 
 16
 In Siliconix, the court held that "even if piracy is construed to encompass patent infringement, patent infringement does not occur in the course of advertising, and is not covered as a type of advertising injury." Siliconix 729 F.Supp. at 80. According to the Siliconix court, patent infringement cannot constitute an advertising injury because, under 35 U.S.C. Sec. 271, a patent is infringed by making, using or selling a patented invention, not by advertising it. Id. at 79. Similarly, the California Court of Appeals has recently held that "[p]atent infringement cannot be committed in the course of advertising activities." Aetna Casualty & Surety Co. v. Superior Court, 19 Cal.App.4th 320, 23 Cal.Rptr.2d 442, 446 (1993) (interpreting Bank of the West ). The Aetna court explained that, in patent infringement cases, "the patentee is not injured because a product incorporating its invention is advertised, but because the infringer, without consent, used or sold a product utilizing a patented invention." Id.
 
 
 17
 In response, Iolab argues that, under Bank of the West, if we determine that the Jensen loss was causally connected to Iolab's advertising, we must hold that Iolab's infringing activities constituted piracy arising out of or committed in advertising. Iolab further argues that it incurred legal liability not simply by selling the product--an activity which, according to Iolab would have been immunized under section 271(e)(1)--but by advertising it. Through its advertising, Iolab claims, it thrust itself into a purely commercial realm unrelated to FDA approval activities and beyond the protection of the statute. Thus, according to Iolab, the Jensen loss was caused by the advertising.[4] Neither argument is persuasive. First, regardless of the causal connection between advertising the intraocular lens and the Jensen loss, Iolab's patent infringement cannot reasonably be considered an act of piracy arising out of or committed in advertising. Second, we do not agree with Iolab's contention that there existed a causal nexus between its advertising of the intraocular lens and the Jensen loss.
 
 
 18
 In the context of policies written to protect against claims of advertising injury, "piracy" means misappropriation or plagiarism found in the elements of the advertisement itself--in its text form, logo, or pictures--rather than in the product being advertised. Iolab's claim of piracy arising out of advertising has no basis because Dr. Jensen's claim was based on Iolab's infringement of his patent for the intraocular lens itself rather than on an element of Iolab's advertising of the lens.
 
 
 19
 While patent infringement can be piracy of the advertised product, generally it is not piracy of the elements of the advertisement itself. The policies in question seem designed to cover two types of injury which might occur in the course of advertising: First, dignitary injuries such as defamation, libel, and invasion of privacy and, second, various kinds of misappropriation and passing off which might occur in the text, words, or form of an advertisement. Iolab's infringement of Dr. Jensen's patent does not fit into either of these categories. Iolab was held liable for patent infringement based on its for-profit sales of the intraocular lens, not on piracy of elements of Dr. Jensen's advertising. Had Iolab merely advertised the intraocular lens but not sold the product, Dr. Jensen could not have accused Iolab of infringing his patent. Since Iolab's advertising of the intraocular lens was not an element of Dr. Jensen's claim, Iolab could not reasonably have expected insurance coverage for its infringement. Moreover, although in Bank of the West, the California Supreme Court appears to leave open the possibility that in some cases, a patent infringement claim may be "based on ... the advertisement," Bank of the West, 2 Cal.4th at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545, we hold that Dr. Jensen's claim against Iolab was not based on the advertising of the intraocular lens.[5]
 
 
 20
 Iolab's claim with regard to the relationship between its advertising activities and the Jensen loss does not establish the causal nexus required by Bank of the West. First, under Bank of the West, Iolab would have to show its advertising caused the patent infringement, not the liability. Second, Iolab fails to show that the Jensen loss was caused by its advertising rather than its infringement of Dr. Jensen's patent. The fact that Dr. Jensen produced evidence of Iolab's extensive advertising activities in response to Iolab's attempt to raise a section 271(e)(1) defense, does not establish that the advertising caused the infringement. The advertising was merely evidence of the commercial nature of Iolab's infringing activities. Iolab infringed Dr. Jensen's patent because it sold the intraocular lens, and did so for commercial gain rather than for research. Iolab's advertising activities did not cause the infringement, but merely helped to establish that Iolab's interest in the Jensen patent was for profit and not for research or to obtain FDA approval. Consequently, the Jensen loss was caused by Iolab's patent infringement not by its advertising activities.
 
 
 21
 Accordingly, the Jensen loss was not covered under the policies in question and the grant of the motions to dismiss and summary judgment was appropriate.
 
 CONCLUSION
 
 22
 With respect to the excess insurers, we affirm the district court on the ground that under California law, primary coverage must be exhausted before liability attaches to the excess insurers. Iolab did not exhaust its primary coverage and did not establish that the Jensen loss would ever trigger excess coverage and thus the district court properly dismissed Iolab's claim against the excess insurers. With respect to the primary insurers, we affirm the district court on the ground that Iolab's infringing activities did not constitute "piracy arising out of advertising activities" and, thus, as a matter of law, Iolab cannot show that the Jensen loss was covered by the insurance policies. Consequently, the district court properly dismissed the claims against or granted summary judgment in favor of each of the primary and excess insurers.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 The wording in the policies varies slightly. For example, the policy issued by Seaboard Surety Company provides in relevant part that it will indemnify the insured for "piracy, plagiarism, or unfair competition or idea misappropriation committed or ... arising out of the insured's advertising activities;" Lumbermens Mutual Casualty Company's policy provides coverage for damages caused by injuries "arising out of ... [piracy, unfair competition, idea misappropriation, plagiarism] ... committed ... in any advertisement."
 
 
 [2]
 Although we limit our holding to the primary carriers because the excess insurers are not proper parties to this suit, we note that the same rationale would apply to the policies providing excess coverage
 
 
 [3]
 Iolab argues that variations in wording in different policies provide a basis for distinguishing this case from Bank of the West v. The Superior Court of Contra Costa County, 2 Cal. 4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992), which our holding relies on. According to Iolab, a crucial difference between the policy involved in Bank of the West and the policies in the present case, is that none of the policies in question include the sentence "in the course of" or "advertising injury" but refer instead to offenses "arising out of advertising." We are not persuaded by Iolab's argument. We see no reason to distinguish the policies in question from the one considered in Bank of the West. We think that the Bank of the West court did not intend its holding to be limited to insurance policies that include the term "in the course of advertising injury" but rather to apply to a broader category of policies including the ones considered here. See Bank of the West, 2 Cal. 4th at 1273-74, 10 Cal.Rptr.2d 538, 833 P.2d 545 ("[O]ther questions about the scope of coverage for 'advertising injury' continue to have substantial importance. For that reason we shall address, ... the parties' arguments about the requisite connection between 'advertising activities' and 'advertising injury.' ")
 
 
 [4]
 In its brief, Iolab asks that, in the alternative, this Court reverse summary judgment because there exist material issues of fact as to causation. At oral argument, however, Iolab conceded that the insurers would not be required to provide indemnification for liability based on sales of an infringing product, regardless of whether or not the infringer generated those sales through advertising. Moreover, Iolab has not alleged any additional facts that would warrant reversal to determine the issue of causation and therefore we decline Iolab's request. Although causation is a question of fact, it may be decided as a matter of law if, under undisputed facts, reasonable minds could not differ. Onciano v. Golden Palace Restaurant, 219 Cal.App.3d 385, 394-95, 268 Cal.Rptr. 96 (1990). Here, we decide the question of causation as a matter of law, because Iolab's only remaining argument in support of its contention that there was a causal connection between its advertising and its infringing activities does not require any additional factual findings
 
 
 [5]
 The Bank of the West court did not provide examples of what constitutes a patent infringement claim based on advertising of a patented invention. Although the issue is not before us, where the advertising and the infringing sales are merged, as in sale of a patented product by mail order catalogue, or where an entity uses an advertising technique that is itself patented, a court might possibly hold that the infringement arises out of or is committed in the advertising