**DOGLOO, INC., a California corporation, Plaintiff,**

v.

**NORTHERN INSURANCE COMPANY OF NEW YORK, a New York corporation, and Cigna Property and Casualty Co., a Connecticut corporation, Defendants.**

No. CV95–3591 ABC (CTx).

United States District Court, C.D. California.

Dec. 1, 1995.

David A. Gauntlett, Gauntlett & Associates, Irvine, CA, for plaintiff.

James C. Nielsen, Glendale, CA, Thomas H. Nienow, San Francisco, CA, John D. Ott, Wright, Robinson, McCammon, Osthimer & Tatum, Los Angeles, CA, for defendants.

COURT'S SECOND ORDER RE: DEFENDANT NORTHERN INSURANCE COMPANY OF NEW YORK'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

COLLINS, District Judge.

Defendant Northern Insurance Company of New York's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss came on regularly for hearing before this Court on December 1, 1995. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Defendant Northern Insurance Company of New York's motion to dismiss is DENIED.

## I. Procedural Background

Plaintiff DOGLOO, INC. ("Dogloo") filed a Complaint against Defendants NORTHERN INSURANCE COMPANY OF NEW YORK ("Northern") and CIGNA PROPERTY AND CASUALTY CO. ("Cigna") on May 30, 1995. Dogloo filed a First Amended Complaint ("FAC") on September 27, 1995, and a Second Amended Complaint ("SAC") on November 9, 1995. In its SAC, Dogloo joined INSURANCE COMPANY OF NORTH AMERICA ("INA") as a Defendant. Dogloo's SAC alleges that Defendants breached their insurance contracts by contending that their "agreements to defen[d] do[ ] not trigger [Dogloo's] right to retain independent counsel at [Defendants'] expense." SAC at ¶¶ 34 and 41. In addition, Dogloo seeks declaratory relief.

Defendant Northern moves to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Plaintiff's Allegations

Dogloo's SAC alleges, in pertinent part, as follows:

—INA/Cigna issued Dogloo a Commercial General Liability Policy No. D29470662 (the "INA Policy") for the period July 1, 1993 to July 1, 1994.

—Northern issued Dogloo a Commercial General Liability Policy No. EPA225975 (the "Northern Policy") for the period July 1, 1994 to July 1, 1995.

—Both the Northern Policy and the INA Policy (collectively, the "Policies") provide coverage for "advertising injury" and "personal injury." The Policies also provide that the respective insurers will defend any "suit" seeking covered damages.

—The Policies define "advertising injury" as an injury arising out of one or more of the following offenses.

    a. Oral or written publication material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business; or

    d. Infringement of copyright, title or slogan.

SAC at ¶ 10.

—The Policies define "personal injury" as an injury, other than "bodily injury" arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e. Oral or written publication or material that violates a person's right of privacy.

*Id.*

—Dogloo filed suit alleging trademark and trade dress infringement against Doskocil Manufacturing, Inc. ("Doskocil"). Doskocil counterclaimed against Dogloo for misappropriation of trade secrets (alleging that Dogloo misappropriated Doskocil's cycle time, mold weight, and doghouse design), tortious interference with business relationships, tortious interference with contract, attempt to

monopolize, unfair competition (arising under Section 43(a) of the Lanham Act), and trademark cancellation. "Doskocil's Counterclaim charges Dogloo with various theories of recovery premised upon its improper advertising materials which demonstrate the functional benefits of the pet shelter configuration. It further claims that based on such advertising materials, Dogloo is estopped from asserting that the configuration of its pet shelter is non-functional or that it may sue on trademark or trade dress protection claims." SAC at ¶ 16.

—On or about March 8, 1995, Dogloo notified Northern of Doskocil's Counterclaim.

—On June 19, 1995, Northern agreed to defend Dogloo in the Doskocil Counterclaim, subject to a reservation of rights. Specifically, Northern contended that

> Northern's reservations of rights refer only to issues extrinsic to the issue of Dogloo's alleged liability and defense counsel and would have no ability to affect coverage inasmuch as Northern contends that no coverage exists as a matter of law. Therefore, no conflict of interest exists between Northern and Dogloo that would require retention of independent defense counsel pursuant to California Civil Code § 2860. Accordingly, Northern will refer this matter to the firm of Bronson, Bronson & McKinnon.... Of course, current counsel may continue to represent Dogloo with respect to its action against Doskocil, and I will instruct the Bronson firm to cooperate fully with them in that regard.

SAC at ¶ 23.

—Northern refused to agree that its reservation of rights triggered a conflict of interest so that Section 2860 of the California Civil Code would apply to allow Dogloo to retain independent counsel to defend against Doskocil's Counterclaims.

—On May 24, 1995, Dogloo notified INA and Cigna of Doskocil's Counterclaim.

—On July 27, 1995, INA and Cigna agreed that Dogloo was owed a duty of defense but subject to a reservation of rights. INA/Cigna contended that California Civil Code Section 2860 applied to the payment of attorney's fees with respect to Dogloo's defense.

—Doskocil abandoned its Counterclaim on July 17, 1995. Thus, Dogloo has incurred no covered defense costs since such time.

—Both Northern and INA/Cigna have breached their contracts with Dogloo by contending that the Policies do not require the insurers to reimburse Dogloo for the costs incurred by independent counsel in defending against Doskocil's Counterclaim.

Dogloo prays for declaratory relief as well as reimbursement for defense costs incurred in defending against the Doskocil Counterclaim.

### III. Discussion

#### A. Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). Therefore, a court must not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir.1989) (quoting *Conley v. Gibson* ), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *see Haddock v. Board of Dental Examiners of California*, 777 F.2d 462, 464 (9th Cir. 1985) (complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory).

A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual

allegations. *Western Min. Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).

▮ Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.,* 950 F.2d 1478, 1483 (9th Cir.1991). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279 (9th Cir. 1986).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

## B. Analysis

### 1. Northern's Duty to Defend

▮ Northern argues that Dogloo's allegations against Northern must be dismissed because Northern was under no obligation to defend Dogloo against Doskocil's Counterclaim. Under California law,[1] an insurance carrier "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (emphasis in original). "Hence, the duty [to defend] 'may exist even where coverage is in doubt and ultimately does not develop.'" *Montrose Chemical Corp. of Calif. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153 (1993) (quoting

*Saylin v. California Ins. Guarantee Ass'n,* 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493 (1986)).

Moreover, "[o]nce the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and uncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993) (citing *Hogan v. Midland Nat'l Ins. Co.,* 3 Cal.3d 553, 564, 91 Cal.Rptr. 153, 476 P.2d 825 (1970); *Republic Indemnity Co. v. Superior Court,* 224 Cal.App.3d 492, 498, 273 Cal.Rptr. 331 (1990); *California Union Ins. Co. v. Club Acquarius,* 113 Cal. App.3d 243, 248, 169 Cal.Rptr. 685 (1980)). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Id.* (citing *CNA Casualty of Calif. v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 607, 222 Cal.Rptr. 276 (1986)).

The California Supreme Court has allocated each party's burden of proof in a duty to defend case as follows:

To prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish the *absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.* Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the re-

---

**1.** It is undisputed that California law applies to this case. Paragraph 7 of the SAC states, in pertinent part, that "[t]he substantive rights of the parties are governed by the law of California because the parties entered into the contract of insurance in California and because there is no evidence that the parties did not intend to contract pursuant to the laws of California." SAC at ¶ 7. Moreover, in a diversity action, a federal court must apply the choice of law rules of the forum state. *Ferens v. John Deere Co.,* 494 U.S.

516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). California's choice of law rules provide that "the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state." *Bernhard v. Harrah's Club,* 16 Cal.3d 313, 317–18, 128 Cal.Rptr. 215, 546 P.2d 719 (1976), *cert. denied,* 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136. In this case, Northern does not dispute that California law applies.

spective burdens merely reflects the substantive law.

*Montrose,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

Therefore, in order to prevail on its motion to dismiss, Northern must prove that none of the causes of action alleged against Dogloo in Doskocil's Counterclaim are potentially covered under the Northern Policy. Stated differently, this Court must deny Northern's motion if, viewing the SAC in the light most favorable to Dogloo, the Northern Policy potentially covers even one of Doskocil's alleged counterclaims. Upon careful consideration, the Court cannot say that, on the basis of the SAC alone, there is no potential coverage for Doskocil's sixth counterclaim for unfair competition. Accordingly, for the reasons set forth below, the Court DENIES Northern's motion to dismiss.

The Northern Policy provides coverage for advertising injuries arising out of misappropriation of advertising ideas or style of doing business. SAC at ¶ 10. Thus, Northern had a duty to defend Dogloo against Doskocil's Counterclaim if any of Doskocil's claims (1) potentially constitutes misappropriation of an advertising idea or style of doing business and (2) there is a causal connection between the alleged injury and Dogloo's "advertising activities." [2] *See Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1277, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (" 'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage" under a policy for advertising injury).

### 2. Doskocil's Sixth Counterclaim for Unfair Competition Pursuant to Section 43(a) of the Lanham Act

Doskocil asserts its sixth counterclaim for unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (the "Lanham Act"), "more commonly known as 'trade dress' infringement." Mot. at 17:5. In its Counterclaim, Doskocil alleges that it is "the owner . . . of all product configuration

trademark rights in a pet shelter known as the Z Daug Haus" and that "Dogloo has used Doskocil's configuration trademark. . . . [which] constitutes a false designation of origin and a false description or representation of goods" in violation of the Lanham Act. Counterclaim at ¶¶ 93, 94, p. 29 of Northern's Request for Judicial Notice (hereinafter, "Counterclaim").[3]

Northern and Dogloo dispute whether Doskocil's counterclaim for trade dress infringement potentially constitutes a claim of misappropriation of advertising ideas or style of doing business under the Northern Policy, and whether there is a causal connection between Dogloo's advertising activities and the injury alleged in the counterclaim. As discussed below, for the purposes of the instant motion, the Court agrees with Dogloo that both questions are answered in the affirmative.

### 3. Misappropriation of Advertising Ideas or Style of Doing Business

■ Dogloo and Northern dispute the meaning of the undefined policy term "misappropriation of advertising ideas or style of doing business." *See* SAC at ¶ 10. Northern takes the position that " 'misappropriation of advertising ideas or style of doing business,' as used in the policy, refers [only] to common law misappropriation," Reply at 8:23–24, and therefore does not include Lanham Act trade dress infringement as alleged in Doskocil's counterclaim for unfair competition. Northern's argument relies extensively on Judge Caulfield's decision in *American Economy Ins. Co. v. Reboans, Inc.,* 852 F.Supp. 875 (N.D.Cal.1994), *vacated,* 900 F.Supp. 1246, 34 U.S.P.Q.2d 1692 (N.D.Cal.) ("*Reboans* I"). In analyzing policy language essentially identical to that before this Court, Judge Caulfield concluded that

[m]isappropriation should be limited to its narrow, common law meaning [i.e., excluding trademark or trade dress infringement]. Although some courts have frequently used the term in its more general sense of "to take wrongfully," the phrase

---

**2.** Of course, there would be no coverage unless the injury occurred during the policy period. However, this element is not disputed.

**3.** The Court takes judicial notice of the Counterclaim pursuant to Federal Rule of Evidence 201.

"misappropriation of advertising ideas" committed in the course of advertising the insured's products, as it is used in the CGL insurance policy, has an objective meaning which is not ambiguous.

*Reboans* I, 852 F.Supp. at 882. Moreover, Judge Caulfield found that such narrow construction of "misappropriation of advertising ideas and style of doing business" was "within the objectively reasonable expectations of the insured." *Id.* Judge Caulfield noted that, prior to 1986, the Insurance Services Office, Inc. ("ISO"), "an organization that develops standard forms for the insurance industry and collects statistical data and estimates risks relevant to the form," *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1262, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992), promulgated a standard commercial general liability ("CGL") form which "included 'unfair competition' as a covered class of advertising injuries, and explicitly excluded injuries resulting from trademark, service mark, and trade name infringement." *Reboans* I, 852 F.Supp. at 882. In 1986, however, ISO revised its standard CGL form, replacing the term "unfair competition" with "misappropriation of advertising ideas and style of doing business." *Id.* Also eliminated from the 1986 form, which is identical to the Northern Policy at issue, was the trademark, service mark, and trade name exclusion. *Id.* According to Judge Caulfield, however,

> the trademark infringement exclusion had been necessary when the policy insured unfair competition claims, because "unfair competition" includes counterfeiting and trademark infringement. After unfair competition was replaced with misappropriation of advertising ideas and style of doing business, however, the exclusion was redundant, because one could not misappropriate a trademark.

*Id.*

Despite Northern's urging, the Court declines to follow *Reboans* I. Significantly, Judge Caulfield's decision has been vacated and reversed. *American Economy Ins. Co. v. Reboans, Inc.,* 900 F.Supp. 1246, 34 U.S.P.Q.2d 1692 (N.D.Cal.1995) ("*Reboans* II"); *see Union Ins. Co. v. The Knife Co.,* 897 F.Supp.1213, 1216 (W.D.Ark.1995) (noting that *Reboans* II reversed *Reboans* I "and joined the majority trend"). Although Northern is correct that Judge Jensen's rationale for reconsidering *Reboans* I was based on a change in the law regarding "infringement of title"—"an issue on which Judge Caulfield expressly offered 'no opinion'" *Reboans* II, 900 F.Supp. at 1251—Northern ignores the fact that Judge Jensen expressly held that, *pursuant to coverage for "misappropriation of style of doing business", the insurer had a duty to defend a Lanham Act trade dress infringement claim asserted against its insured.* As Judge Jensen noted, "numerous courts that have examined advertising injury coverage for 'misappropriation of style of doing business['] have concluded that the term refers to trade dress infringement." *Id.* at 1254. *See, e.g., Union Ins. Co. v. The Knife Co.,* 897 F.Supp. 1213, 1215–16 (W.D.Ark.1995) (" 'passing off' and trademark infringement constitute 'misappropriation of advertising ideas or style of doing business' "); *Poof Toy Products, Inc. v. United States Fidelity & Guarantee Co.,* 891 F.Supp. 1228, 1233 (E.D.Mich.1995) ("claim ... for trademark and trade dress infringement constitute[s] an 'advertising injury,' under the enumerated definition 'misappropriation of advertising ideas or style of doing business' "); *Owens–Brockway Glass Container, Inc. v. International Ins. Co.,* 884 F.Supp. 363, 369 (E.D.Cal.1995) (although coverage for "advertising injury" does not cover patent infringement, " 'style of business' refers to the outward appearance or signature of a business, the sort of claim comprised under trade dress"); *Advance Watch Co. v. Kemper Nat'l Ins. Co.,* 878 F.Supp. 1034, 1041–42 (E.D.Mich.1995) ("the term 'misappropriation of style of doing business,' ... is broad enough to embrace claims that the insured copied a design explicitly protected by trademark. When these claims are found to arise out of advertising activity, the cases support a finding of insurer liability...."); *P.J. Noyes Co. v. American Motorists Ins. Co.,* 855 F.Supp. 492, 494–95 (D.N.H.1994) ("the allegation that [the insured] used the name "Dustfree Precision Pellet" in their advertising, literature and packaging, arguably falls within the ambit of misappropriation of advertising ideas or style

of doing business or infringement of a title or slogan"); *St. Paul Fire and Marine Ins. Co. v. Advanced Interventional Systems, Inc.,* 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd* 21 F.3d 424 (4th Cir.1994) (applying California law to interpret a CGL insurance policy, court found that " '[s]tyle of doing business' expresses essentially the same concept as the more widely used term: 'trade dress' "); *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Inc. Co.,* 818 F.Supp. 553, 557 (W.D.N.Y.1993), vacated by reason of settlement, 153 F.R.D. 36 (W.D.N.Y.1994) ("one's mark and name is an integral part of an entity's 'style of doing business.' Such misappropriation of 'style of doing business' would include trademark, trade name or servicemark infringement."); *Ross v. Briggs & Morgan,* 520 N.W.2d 432, 435–36 (Minn.App. 1994) ("[b]ecause the 'passing off' portion of Jaffe's deceptive trade practices and unfair competition claims suggest that [the insured] took and used his advertising ideas and possibly even his entire style of doing business, they arguably were covered by the 'unauthorized taking of advertising ideas or style of doing business' clause in the policy").

Given this abundant authority, the Court cannot say that the Northern Policy's coverage for misappropriation of advertising ideas or style of doing business does not potentially extend to Doskocil's counterclaim for trade dress infringement in violation of the Lanham Act. Indeed, the Court finds that Doskocil's allegations that Dogloo's use of "Doskocil's configuration trademark … constitutes a false designation of origin and a false description or representation of goods," Counterclaim at ¶ 94, fit squarely within the policy coverage for misappropriation of style of doing business. In essence, Doskocil alleges that Dogloo misappropriated its style of doing business by manufacturing, advertising, and selling a dome-shaped doghouse.

### 4. Causation

■ In addition to arguing that Doskocil's counterclaim for unfair competition does not constitute misappropriation, Northern contends that Dogloo cannot establish the requisite causal nexus between the "advertising injury" and Dogloo's "advertising activities."

*See Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1277, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (" 'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage"). The Court does not agree. Dogloo's contention relies on two Ninth Circuit cases regarding an insurer's duty to defend its insureds against allegations of patent infringement. *See Iolab Corp. v. Seaboard Surety Co.,* 15 F.3d 1500 (9th Cir.1994) and *Everest and Jennings, Inc. v. American Motorists Ins. Co.,* 23 F.3d 226 (9th Cir. 1994). In both cases, the Ninth Circuit recognized that "the statutory definition of patent infringement refers only to the making, using, or selling of a product." *Everest and Jennings,* 23 F.3d at 229; *see* 35 U.S.C. § 271(a) ("whoever without authority makes, uses or sells any patented invention … infringes the patent"). The *Iolab* court held that "Iolab's claim of piracy arising out of advertising has no basis because Dr. Jensen's claim was based on Iolab's infringement of his patent for the intraocular lens itself rather than on an element of Iolab's advertising of the lens." *Iolab,* 15 F.3d at 1506. The court reasoned as follows:

> "Iolab infringed Dr. Jensen's patent because it *sold* the intraocular lens, and did so for commercial gain rather than for research. Iolab's advertising activities did not cause the infringement, but merely helped to establish that Iolab's interest in the Jensen patent was for profit and not for research or to obtain FDA approval. Consequently, the Jensen loss was caused by Iolab's patent infringement not by its advertising activities."

*Id.* at 1507 (emphasis in original). Thus, *Iolab* and *Everest and Jennings* simply confirm the holding of *Bank of the West,* i.e., that there can be no recovery for advertising injury unless the advertising itself actually causes the injury. The cases further illustrate that advertising injury coverage does not extend to cases in which advertising alone is not actionable. *See Iolab,* 15 F.3d at 1507 ("Had Iolab merely advertised the intraocular lens but not sold the product, Dr. Jensen could not have accused Iolab of infringing his patent.").

Given the above authority, the Court agrees with Northern that "the infringement

need be committed in an advertisement rather than in the sale of a product in order to be covered." Reply at n. 10, 16:26–27. However, what Northern appears to overlook is that, in contrast to a claim for patent infringement—which is limited to the making, using, or selling of another's product—Section 43(a) of the Lanham Act provides a remedy for "a false designation of origin, or any false description or representation." 15 U.S.C. § 1125(a). As the United States District Court for the Western District of New York recognized,

> [t]rademark or tradename infringement ... necessarily involves advertising, or use, of the mark or name to identify the merchant's goods or services. Thus ... it is not possible to allege a claim for trademark, servicemark or trade name infringement without the infringing mark being used to identify the goods or services to the public. This use qualifies as advertising. . . .

*J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Inc. Co.*, 818 F.Supp. 553, 558 (W.D.N.Y.1993). There is nothing in Doskocil's counterclaim to suggest that the alleged injury was not caused, at least in part, by Dogloo's advertising of a dome-shaped doghouse. *See Sentex Systems, Inc. v. Hartford Acc. & Indem. Co.*, 882 F.Supp. 930, 945 (C.D.Cal.1995) ("[t]he case law ... does not require the advertising activities to be the only cause of the advertising injuries. [citation omitted]. Nor is the insured required to conclusively establish causation at the duty to defend stage."). Accordingly, the Court finds that Northern has not met its burden to establish the absence of potential coverage with respect to causation.

### 5. The "First Publication" Exclusion

 Finally, Northern argues for the first time in its Reply that the policy's "first publication" exclusion negates the possibility of coverage as a matter of law. The Northern Policy excludes coverage for personal or advertising injury which arises out of "oral or written publication of material whose first publication took place before the beginning of

the policy period." Reply at 17:9–10. The Northern Policy period ran from July 1, 1994 to July 1, 1995. Northern argues that this Court's finding in the underlying case that Dogloo had "engaged in a nationwide ad campaign, spending over $3 million *over the past five years*," Dogloo's Request for Judicial Notice at 66:17–20 [4] (emphasis added), conclusively establishes that the alleged advertising injury arose out of material whose first publication took place before the beginning of the policy period. Although it is true that "where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability," *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 379, 900 P.2d 619 (1995) (citing *Saylin v. California Ins. Guarantee Ass'n*, 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493 (1986)), the Court's finding that Dogloo has spent over $3 million on advertising in the past five years does not conclusively establish that the "first publication" exclusion precludes coverage. This is so because, based on the record before it, the Court cannot say that any advertising published prior to the policy period caused the type of injury alleged in Doskocil's Counterclaim.[5] Where the application of an exclusion is only a possibility, the duty to defend continues. *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 613, 222 Cal.Rptr. 276 (1986). Therefore, based on the current state of the record, the "first publication" exclusion does not operate to negate Dogloo's claim.

Based on the foregoing, the Court finds that Northern has not met its burden of establishing that, as a matter of law, Dogloo's SAC fails to state a cause of action upon which relief can be granted. Accordingly, the Court hereby ORDERS that Defendant Northern's motion to dismiss is DENIED.

**SO ORDERED.**

---

4. The Court takes judicial notice of its Order in the underlying case pursuant to Federal Rule of Evidence 201.

5. The Court notes, without addressing the merits, that this issue might appropriately be the subject of a summary judgment motion.