# Sheare v. State Farm Mutual Automobile Insurance Co.

C.P. of Lackawanna County, no. 95 CV 3581.

*Gary Solomon,* for plaintiff.
*Lee Ullman,* for defendant.

BARRASSE, *J.,* February 21, 2002—Presently before the court is the defendant's motion for summary judgment. This matter arises out of a claim made by the plaintiff, Trevor Sheare, for insurance proceeds and bad faith damages resulting from the theft of the plaintiff s automobile, which was insured by the defendant, State Farm Mutual Automobile Insurance Company.

On April 19, 1995, Carol Sheare, the plaintiff's wife, reported the theft of the Sheare's automobile to both the police and State Farm. While making the report to State Farm, Mrs. Sheare indicated that when the Sheares went to bed the night before, they left the car unlocked in the driveway; Mrs. Sheare thought that Mr. Sheare had left his keys in the front door lock the night before the car was stolen; and that Mrs. Sheare still had her set of keys to the automobile. The Sheares were notified that State

Farm would send them a "theft kit" that would be required to complete the filing of the claim.

Later on the day of April 19, the police found the Sheares' automobile. Mr. Sheare notified State Farm that the police found his car and that any damage done to the car would be reported to State Farm the following day by Mr. Sheare. On April 20, Mr. Sheare spoke to a representative from State Farm who asked Mr. Sheare a series of questions from an "Insured contact questionnaire—theft" document. State Farm also mailed Mr. Sheare an affidavit of vehicle theft document. Mr. Sheare advised the State Farm agent that there were no keys left in the automobile, and that Mr. Sheare had one set of keys in his possession.

On April 21, 1995, State Farm's appraiser inspected the vehicle and declared it a total loss. The inspector noted that the switch cover of the ignition was off, but there was no damage to the steering column or ignition. He concluded that the car could not have been started without the keys, but found no keys in the car. The inspector also noted that someone had unsuccessfully tried to light the car on fire.

On April 22, 1995, Mr. Sheare completed the affidavit of vehicle theft. In the affidavit, Mr. Sheare indicated that the automobile was not locked at the time it was stolen, no keys were left in the car, that the vehicle's paint and body were in good condition, and that the transmission and engine were in excellent condition. Mr. Sheare listed no prior damage to the automobile.

On April 24, 1995, Mr. Sheare provided the "payoff" amount that was owed to the bank on the vehicle. On May 11, 1995, after several discussions with Mr. Sheare, State Farm paid the bank in full.

On May 24, 1995, State Farm re-inspected the automobile. The inspection revealed that the car had a new radiator and engine. The car was again inspected on May 31, 1995, by an independent forensic specialist who determined that the stereo, car battery, wheels and tires had not been stolen; the locks were intact and undamaged; the ignition lock was intact and had not been defeated; the gear selector was locked in a parked position, and the column had not been damaged sufficiently to unlock the gear selector; there was no evidence that the ignition lock was forced or tampered with; that there was a failed attempt to burn the car; and that "nothing, other than a key of the proper type, had been used to start and operate this vehicle."

State Farm continued its investigation of the theft of the automobile. The company completed a prior damage estimate on the car, and interviewed the Sheares. During the interviews, Mrs. Sheare stated that her car keys were lost and that the Sheares were experiencing financial difficulties. Mr. Sheare indicated that he left his keys in the front door of the house the night of the theft and that Mrs. Sheare found the key ring in the front door with the car key missing. Mr. Sheare also acknowledged that he had replaced the radiator and engine in the car in 1994, and that there was prior damage to the vehicle.

Based on the representations made by the Sheares regarding the theft and condition of the vehicle, as well as the investigation by State Farm representatives, State Farm noted "red flags" in the investigation. Specifically, State Farm was concerned that (1) "The ignition and steering column of the vehicle was undamaged, thus a key had been used to start the vehicle;" (2) "The Sheares pro-

vided different stories regarding the location of Trevor Sheare's keys;" (3) "The Sheares admitted to financial difficulties;" and (4) "Trevor Sheare stated that there had been no serious repairs on the vehicle but an inspection showed a new radiator and engine had been installed recently."

On June 16, 1995, State Farm, through counsel, sent a letter to the Sheares requesting an examination under oath. On June 19, 1995, State Farm was notified by Attorney Kornblau that the Sheares had retained him as counsel, and that there were several arrests in the Sheare's area for similar vehicle thefts. On June 20, 1995, a representative from State Farm met with the Carbondale Township Police and obtained a copy of the police report. The officer also confirmed that similar thefts had occurred.

On June 22, 1995, approximately two months after the filing of the insurance claim, State Farm contacted Attorney Kornblau in an effort to finalize settlement of the claim. The Sheares have opposed a settlement amount that does not include bad faith damages. To that end, the Sheares have filed this suit for bad faith damages. State Farm opposes the claim for bad faith damages and has brought this motion for summary judgment.

A party may move for summary judgment as a matter of law when there are no genuine issues of material fact or when an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action that would require the issues to be submitted to the jury. Pa.R.C.P. 1035.2. The court must view all facts in the light favorable to the non-moving party. *Washington v. Baxter,* 553 Pa. 434,

441, 719 A.2d 733, 737 (1998). Summary judgment will only be granted in cases where the right is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Electronic Laboratory Supply Co. v. Cullen,* 712 A.2d 304, 307 (Pa. Super. 1998).

In this case, the primary factual dispute is whether or not State Farm made every attempt to secure a copy of the police report. Although State Farm claims to have requested the report on numerous occasions, the Sheares claim that State Farm waited two months before requesting a copy from the police. Viewing the facts in the light most favorable to the non-moving party, this court will find for the purposes of the summary judgment motion that State Farm failed to obtain a copy of the police report for approximately two months from the time the claim was filed. The Sheares contend that the delay was caused by bad faith on the part of State Farm. However, as the following paragraphs will demonstrate, the issue of whether State Farm obtained the police report at an earlier date is neither a material fact, nor a basis for a bad faith claim.

The Superior Court has defined bad faith in the context of insurance litigation as "any frivolous or unfounded refusal to pay proceeds of [a] policy." *Adamski v. Allstate Insurance Co.,* 738 A.2d 1033, 1036 (Pa. Super. 1999). To establish bad faith, the Superior Court has used the following two-part test, "both elements of which must be [satisfied] by clear and convincing evidence: (1) the insurer lacked a reasonable cause for denying coverage; and (2) the insurer knew or recklessly disregarded its lack of reasonable basis." *Id.*

In a case similar to the case before this court, the court in *Brown v. Liberty Mutual Insurance Group* held that

an 11-month delay in paying a claim did not constitute bad faith because the insurance company noted a single red flag in the claim which merited additional investigation. *Brown v. Liberty Mutual Insurance Group,* 2001 WL 87741 (E.D. Pa. 2001). In *Brown,* the plaintiff made statements regarding her finances that contradicted the information contained in her credit report. *Id.* The court held that the insurance company acted reasonably in delaying the claim while the theft was further investigated. *Id.*

Other courts have similarly held that delays, lasting longer than two months, in paying insurance claims did not constitute bad faith on the part of the insurer. In *Kosierowski v. Allstate Insurance Company,* the court agreed with the plaintiff that delay is a relevant factor in determining whether bad faith has occurred, but held that if delay is attributable to the need to investigate further, then no bad faith has occurred. *Kosierowski v. Allstate Insurance Co.,* 51 F. Supp.2d 583, 588-89 (E.D. Pa. 1999). In *Kosierowski,* the delay between the accident and the payment of the claim was four years. *Id.* In *Sanders v. State Farm,* the court held that a delay of eight months did not constitute bad faith because the "red flags" that arose during the investigation of the claim led to reasonable cause for the delay. *Sanders v. State Farm,* 47 D.&C.4th 129 (2000).

In the instant case, State Farm found several red flags, which created a need for further investigation. These red flags include (1) the fact that the ignition and steering column of the vehicle were undamaged; (2) the Sheares provided different stories regarding the location of Trevor Sheare's keys; (3) the Sheares admitted to financial difficulties; and (4) Trevor Sheare stated that there had been

no serious repairs on the vehicle, yet an inspection showed a new radiator and engine had recently been installed. Despite these red flags, State Farm was prepared to settle the claim approximately two months after the claim was filed. In fact, State Farm paid the bank the outstanding balance on the Sheares' car loan within three weeks. Therefore, the time of the delay, alone, in this case does not constitute bad faith. Nor does the delay in obtaining the police report constitute bad faith.

The police report provides only general information such as the officer's name; the make, model, and color of the car; the time of dispatch, arrival on the scene, and time of departure. The extent of the officer's remarks in the report are as follows: "This officer recovered this vehicle April 18, 1995, on a mine recumation [sic] road in Carbondale Twp. Actors attempted to burn vehicle no keys in vehicle." No reasonable trier of facts could conclude that the report would provide information sufficient to end the investigation of the claim in light of the "red flags" that were raised during other aspects of the investigation. Importantly, since obtaining the report sooner would have no effect on the investigation of the claim, the factual dispute as to whether State Farm failed to obtain the report sooner becomes a non-material issue. Additionally, State Farm was continuing its investigation on several fronts including interviewing the Sheares and examining the car on many occasions. State Farm was not merely awaiting the police report before pursuing its investigation; rather, the company was actively involved in investigating the claim while, at the same time, awaiting the police report. For the above stated reasons, this court finds that State Farm had reasonable

cause for denying coverage until the claim could be further investigated. Because State Farm had reasonable cause to delay payment of the claim, which has not been refuted by clear and convincing evidence by the plaintiff, an action for bad faith cannot stand.

This reasoning is not affected by the case law contained in the plaintiff's supplemental memorandum of law. In *Bonenberger,* Nationwide Insurance Company failed to perform an independent medical examination of the plaintiff, had no reasonable basis for their valuation of the plaintiff's claim, and failed to properly inform themselves before making a settlement offer which was far less than the value of the claim. *Bonenberger v. Nationwide Insurance Company,* 2002 WL 86033 at 1 (Pa. Super. 2002). In this case, however, State Farm was undergoing an investigation of the claim in order that they would be properly informed before making a settlement offer. State Farm paid off the bank loan within weeks, and was attempting to collect information that would better address the "red flags" raised during the initial investigation. It is not for this court to determine whether an interview with the insured or an investigation of the stolen property would prove more useful than obtaining a copy of the police report. It is enough that State Farm was actively involved in investigating the claim, and that it was only two months before a settlement offer was forthcoming; unlike in *Bonenberger* where the insurance company failed to seek the necessary information to make a proper settlement offer.

The Sheares also argue that State Farm acted in bad faith during questioning of the Sheares, alleging that the representative from State Farm insinuated that Mr. Sheare

512

was involved in the theft. Although this may have been poor judgment on the part of the investigator, such questioning does not rise to the level of bad faith. "[M]ere negligence or bad judgment does not constitute bad faith. . . ." *Frog, Switch & Manufacturing Co. Inc. v. Travelers Insurance Co.,* C.A.3 (Pa.) 1999, 193 F.3d 742, 52 U.S.P.Q.2d 1288.

## CONCLUSION

Despite the "red flags" that arose in the investigation of the theft of the Sheares' car, State Farm was prepared to settle the claim within two months. Whether State Farm obtained a copy of the police report in a more timely manner would have been of no consequence in the investigation in light of the additional "red flags" that were noted by representatives of State Farm. Consequently, there are no issues of material fact which would prevent the granting of a motion for summary judgment, nor is there a basis for a bad faith claim.